IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM HOUSTON,

               Petitioner,               No. CIV S-06-1980 FCD CHS P

    vs.

D.K. SISTO,

               Respondent.            <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2004 convictions for second degree robbery, attempted second degree robbery, and possession of a firearm by a convicted felon, case 03F03719 in the California Superior Court, County of Sacramento.  Petitioner claims that the trial court erred in denying his motion for self-representation, thereby violating his rights under the Sixth and Fourteenth Amendments of the United States Constitution.  After a careful review of the record, this court recommends the petition be denied for the reasons that follow.

/////

/////

/////

1

1    I.  BACKGROUND

2            The following facts giving rise to Petitioner's criminal case are taken from the

3    unpublished opinion of the California Court of Appeals, Third District[1]:

4            In the afternoon of March 12, 2003, R.C. and D.M. were riding
             their bicycles to visit D.M's girlfriend.  When they stopped to call
5            her on D.M.'s cellular phone, defendant got out of a car and
             grabbed the phone.  Defendant pointed a gun at R.C. and told him
6            not to move.  Defendant grabbed necklaces the boys were wearing,
             got back in the car, and drove away.

7
             On March 13, 2003, defendant and a friend were at the apartment
8            of an acquaintance.  After smoking crack cocaine, he and his friend
             left.  When they returned a short time later, defendant pulled out a
9            gun, ordered everyone to the ground, and demanded money and
             drugs.  After none was produced, defendant searched the
10           occupants, their belongings, and the apartment.

11           During pre-trial proceedings on May 20, 2004, the trial court noted that Petitioner

12   had indicated during in camera proceedings that he wished to represent himself at trial.  (RT 24.)

13   However, after a recess, Petitioner rescinded his request for self-representation.  (RT 27-28.)

14   Trial was scheduled to commence on June 8, 2004.  (RT 70).  On that day,  Petitioner indicated

15   through counsel that he wished to proceed "pro per."  (RT 70.)  After an in camera hearing, the

16   motion was denied.  (RT 79.)  Trial proceeded as set with Petitioner represented by counsel.

17   Petitioner was convicted of two counts of second degree robbery, two counts of attempted second

18   degree robbery, and two counts of possession and control of a firearm as a convicted felon.

19   II.  STANDARD OF REVIEW FOR GRANTING HABEAS RELIEF

20           An application for a writ of habeas corpus by a person in custody under a judgment

21   of a state court can be granted only for violations of the Constitution or laws of the United States.

22   28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.

23   Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).  A

24   federal writ is not available for alleged error in the interpretation or application of state law.  *See*

25

26       [1] Opinion is lodged in this record as Lodged Document 9.

1  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149-50 (9th

2  Cir. 2000); *Middleton*, 768 F.2d at 1085.  Nor can habeas corpus be utilized to try state issues *de*

3  *novo.  Milton v. Wainwright*, 407 U.S. 371, 377 (1972).

4        This petition for writ of habeas corpus was filed after the effective date of, and thus

5  is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v.*

6  *Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).

7  Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the

8  merits in state court proceedings unless the state court's adjudication of the claim:

9      (1) resulted in a decision that was contrary to, or involved an
    unreasonable application of, clearly established Federal law, as
10      determined by the Supreme Court of the United States; or

11      (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the
12      State court proceeding.

13  28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*,

14  529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

15        The "contrary to" and "unreasonable application" clauses of §2254(d)(1) are

16  different.  Under the "contrary to" clause of §2254(d)(1), a federal habeas court may grant the writ

17  only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

18  question of law or if the state court decides the case differently than the Supreme Court has on a

19  set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405.  As the Third Circuit has

20  explained, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme

21  Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate

22  that Supreme Court precedent *requires* the contrary outcome."  *Matteo v. Superintendent, SCI*

23  *Albion*, 171 F.3d 877, 888 (3rd Cir. 1999) (en banc) (emphasis in original).  The state court is not

24  required to cite the specific controlling test or the Supreme Court authority, so long as neither

25  the reasoning nor the result of the state court decision contradict same.  *Early v. Packer*, 537 U.S.

26  3, 8-9 (2002).

1    The court may grant relief under the "unreasonable application" clause if the state

2    court correctly identifies the governing legal principle from our decisions but unreasonably

3    applies it to the facts of the particular case.  The focus of this inquiry is whether the state court's

4    application of clearly established federal law is objectively unreasonable.  *Williams*, 529 U.S. at

5    410.  "[A] federal habeas court may not issue the writ simply because that court concludes in its

6    independent judgment that the relevant state-court decision applied clearly established federal law

7    erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.*

8    The court will look to the last reasoned state court decision in determining whether

9    the law applied to a particular claim by the state courts was contrary to the law set forth in the

10   cases of the United States Supreme Court or whether an unreasonable application of such law has

11   occurred.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919

12   (2003).  A court may deny habeas relief on the ground that relief is precluded by 28 U.S.C.

13   §2254(d) without addressing the merits of the claim.  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

14   Where the state court reaches a decision on the merits but provides no reasoning to support its

15   conclusion, a federal habeas court independently reviews the record to determine whether habeas

16   corpus relief is available under section 2254(d).  *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir.

17   2003); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has

18   not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

19   AEDPA's deferential standard does not apply and a federal habeas court must review the claim de

20   novo.  *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160,

21   1167 (9th Cir. 2002).

22   III.  ANALYSIS OF PETITIONER'S CLAIM

23   On May 20, 2004, Petitioner made an in camera motion to relieve counsel and have

24   new counsel appointed pursuant to *People v. Marsden*, 2 Cal. 3rd 118 1970 (hereinafter referred

25   to as a *Marsden* motion).  (RT 5-6.)  The *Marsden* motion was denied.  (RT 24.)   The trial court

26   subsequently noted that Petitioner had indicated during the *Marsden* motion that Petitioner wished

1  to represent himself.  (RT 24.)  Petitioner also stated that he needed more time to prepare for trial.

2  (RT 24.)  The trial court declined Petitioner's request for a "conditional continuance" and

3  suggested that Petitioner discuss the matter of representation with his counsel during the lunch

4  recess.  (RT 24.)  After the recess, the following exchange took place:

5          THE COURT: [T]he right to represent yourself is one of
           Constitutional dimension and I will certainly consider that if that is
6          truly what you want to do, but --

7          THE DEFENDANT:  If you give me more time, yes, that's what I--

8          THE COURT:  Don't argue with me, just tell me if you want me to
           hear your motion or not.  I will hear it and consider it and all the
9          factors relating to it if that's your request.  If it's not, then we'll
           just move onto more productive grounds.
10
           THE DEFENDANT:  Let's move on.
11
           MR. ROSENFELD:  Your Honor, I just - - for clarity I want Mr.
12         Houston to understand what the Court just asked him.  I'm not sure
           if he understood the question.
13
           THE COURT:  Well, I'm asking him if he wants me to consider
14         his motion, his request to represent himself, and to consider all the
           information that he wants to present regarding that?  And I am not
15         making any - - passing any ruling or any judgment on the motion,
           I'm just asking him if that's what he wants to do.  I don't want to
16         engage in a back and forth debate with him about it.  My job is to
           respond to motions that are posed on behalf of the defense of the
17         People, to evaluate all the facts and to rule on them.

18         So I'm telling you that we had some discussion, that was not any --
           there was no ruling made this morning.  I will consider it if that is
19         what you really want.

20         MR. ROSENFELD:  Thank you, Your Honor.

21         THE COURT:  And at this point Mr. Houston wishes to proceed
           without making that motion; is that correct, sir?
22
           THE DEFENDANT:  That's correct.
23
           THE COURT:  Okay.
24

25  (RT 27-28.)

26

On the morning of June 8, 2004, the first day of trial, Petitioner indicated through counsel that he wished to proceed "pro per." (RT 70.)  The following exchange took place:

THE COURT:  All right.  Well, Mr. Houston, at this time, I can't imagine that you are prepared to proceed to trial.  Is that correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Why don't you tell me what it is that you want.

MR. ROSENFELD:  I think that there is a danger with him speaking freely with the court at this time, your Honor, with the district attorney in the room.

THE COURT:  Well, this isn't a Marsden.  I mean, it's a request to represent himself.

I'm not asking you to talk about confidential relations with your attorney, but honestly you have a lot of different things that you have said that you want over the brief time that we've been interacting, and you seem to want something different every day.

And this is a big moment.  It's a big time.  We talked about this a little while ago.  Representing yourself is a very, very significant issue.  It is a lot of time that you face.

It's a serious case.  There's legal rules that apply to this case.  Your attorney has done all the preparation.  And quite honestly, the erratic behavior you've displayed and the violent outburst that you've displayed are such that not only could you be considered ineffective in the sense that you're not an attorney, but also you may be limited to how much you can move around or what you're going to be in a position to do, because there are some security issues and concerns the Court has regarding some of your violent outbursts in the past couple of days, the extent to which you raise security concerns for the members and people present in this court.

So I'm not sure -- I'm not actually convinced at all that you really want to represent yourself.  I suspect, and what I get from you, is that you just want to make a lot of motions because you're not happy that you're here.

If you want to have a confidential hearing just generally to discuss something, I will ask Miss Ball to step outside one more time just briefly.

MR. ROSENFELD:  I believe that's what he wants, your Honor.

THE COURT:  All right.  Miss Ball, if you would, perhaps since

6

1   we have jurors coming, we can have her in the court clerk's office
    with the door closed so she's in the back offices but not --
2
    (Whereupon proceedings were had, after which were ordered
3   sealed by the Court.)
    (The following proceedings were then had in the presence of the
4   district attorney.)

5   THE COURT:  You've indicated to me you don't really want to be
    -- pro per, and I don't think you do either.
6
    You've been equivocal in your raising of it and late in your
7   request.

8   MR. ROSENFIELD:  Your Honor, he's indicating that he wants to
    go pro per, and he wants to disqualify the Court.
9
    THE COURT:   All right.  The motion to represent yourself is
10  denied.  I think it is [a] manipulative, ill timed, late request solely
    offered for the purpose of delay and made out of just a general
11  dissatisfaction with the way things are happening here.

12  The motion to disqualify the Court is denied.  I have no bias, or
    there is no reason that this case cannot be tried fairly in this
13  department.  And it will proceed here.

14  (RT 70-71 & 79.)

15         In *Faretta v. California*, 422 U.S. 832 (1975), the United States Supreme Court

16  held that a criminal defendant has a constitutional right to proceed pro se.  In making its ruling,

17  the court stated as follows:

18         Here, weeks before trial, Faretta clearly and unequivocally declared
       to the trial judge that he wanted to represent himself and did not
19     want counsel. The record affirmatively shows that Faretta was
       literate, competent, and understanding, and that he was voluntarily
20     exercising his informed free will...

21         In forcing Faretta, under these circumstances, to accept against his
       will a state-appointed public defender, the California courts
22     deprived him of his constitutional right to conduct his own defense.

23  *Id*. at 835.

24         In contrast to the facts presented in *Faretta,* Petitioner did not make his request to

25  represent himself weeks before trial.  The issue was briefly raised on May 20, 2004, several days

26  before trial, however Petitioner clearly rescinded the motion, stating "[l]et's move on" and

7

1    affirming "[t]hat's correct" when asked to clarify that he wanted to proceed without making the

2    motion.  (RT 27-28.)  Petitioner's *Faretta* motion was not made until June 8, 2004,  the very day

3    that the trial was scheduled to commence.  Adopting the time period set forth in *Faretta*,

4    Petitioner's request on the first day of trial did not give him an unqualified right to self-

5    representation.

6          Subsequent to the *Faretta* decision, the United States Court of Appeals for the

7    Ninth Circuit held that to preserve the right to self-representation, a defendant must make a

8    timely and unequivocal request which is not a tactic to secure delay.  *Armant v. Marquez*, 772 F.

9    2d 552, 555 (9th Cir. 1985).  A request for self-representation is timely if made prior to jury

10    selection,  *Maxwell v. Sumner*, 673 F.2d 1031, 1036 (9th Cir.), or if made before the jury is

11    empaneled, unless it is made for the purpose of delay.  *Fritz v. Spalding*, 682 F.2d 782, 784 (9th

12    Cir. 1982).

13          In deciding whether a timely request was made for the purpose of delay, the court

14    must examine the events preceding the request to determine if they are consistent with a good

15    faith assertion of the *Faretta* right and whether the defendant could reasonably be expected to

16    have made the request at an earlier time.  *Fritz*, 682 F.2d at 784-85.  If a defendant accompanies

17    his motion for self-representation with a request for a continuance, this may be strong evidence

18    of a purpose to delay.  *Id*.  "[I]f the district judge determines that the defendant's request is part

19    of a pattern of dilatory activity, the court has the discretion to deny the continuance and require

20    the defendant to proceed to trial on the scheduled date either with the counsel designated or pro

21    se."  *United States v. Flewitt*, 874 F.2d 669, 675 (9th Cir. 1989).

22          In this case, Petitioner could have reasonably been expected to make his *Faretta*

23    motion far earlier than the very day trial was set to commence.  Petitioner had a clear opportunity

24    to make a *Faretta* motion on May 20, 2004, however he declined to do so.  (RT 27-28.)  When

25    Petitioner finally made his *Faretta* motion on the morning of trial, he indicated that he was not

26    prepared to proceed to trial at that time.  (RT 70.)  Petitioner had previously indicated that he

wanted to make a *Faretta* motion only if the court was going to give him more time.  (RT 27.)

The record contains other support for the trial court's determination that Petitioner's conduct was dilatory and that the motion was intended to cause delay.  On May 24, 2004, May 25, 2004, May 27, 2004 and June 1, 2004,  court convened for several continuances without Petitioner's presence due to an "incident" instigated by the Petitioner at the jail where he was being held.  (RT 35-40.)  Petitioner was returned to court on June 4, 2004, at which time he indicated through counsel that he was not able to proceed that morning because "he refuses to eat" and "his hair is botched."  (RT 41-48.)  On the morning of June 7, 2004, Petitioner made a request for additional time which was granted to the extent that court was to reconvene later that afternoon.  (RT 66.)  However, court did not reconvene that afternoon due to another "incident" instigated by Petitioner.  (RT 67.)  The record reflects that Petitioner had to be returned to jail from the custody tank of the courthouse after the sheriff determined that his behavior could not be adequately contained there.  (RT 67-68.)

Petitioner returned to Court the next day on June 8, 2004, at which time he made his *Faretta* motion.  (RT 67-70.)  Petitioner's June 8, 2004 *Faretta* motion was discussed during in camera proceedings.  The following exchange took place:

> THE COURT: All right.  You previously indicated you wanted to represent yourself and then withdrew that request, and you're now again requesting to represent yourself.
>
> Is that truly what you want to do?
>
> THE DEFENDANT: It's not what I want to do, but I feel that, you know, I feel that I am not prepared for trial right now.  I feel that --
>
> THE COURT: You feel that you're not prepared for trial right now?
>
> THE DEFENDANT: To go to trial, you know, I feel a lot of investigation needs to be done in my case, you know.
>
> THE COURT: All right.  Because it's clear you've been pretty, you know, engaging in a lot of behavior to try to stop the trial.

/////

1   THE DEFENDANT: Yes, because I'm facing the rest of my life,
    basically, in prison if I lost.

2

3   And there is things that haven't been done in my case that need to
    be done if we can have a fair trial.

4   (RT 67-70).

5   Petitioner's pre-trial conduct had already caused proceedings to be delayed. Past

6   delay, coupled with Petitioner's requests for additional time and admission that he engaged in

7   behavior to stop the trial, are strong evidence of his intent to cause further delay through his

8   *Faretta* motion. *See Fritz*, 682 F.2d at 784.

9   The trial court in this case denied Petitioner's *Faretta* motion made on the

10  morning of trial, determining that it was a "manipulative, ill timed, late request solely offered for

11  the purpose of delay." (RT 79.) There is ample support for this determination in the record. In

12  accord with *Faretta* and subsequent cases of the Ninth Circuit, Petitioner's claim that he was

13  denied his constitutional right of self-representation must be rejected.

14  IV.  CONCLUSION

15  For the foregoing reasons, IT IS HEREBY RECOMMENDED that Petitioner's

16  application for a writ of habeas corpus be denied.

17  These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

19  days after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties. Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

22  shall be served and filed within ten days after service of the objections. The parties are advised

23  that failure to file objections within the specified time may waive the right to appeal the District

24  Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

25  DATED: November 7, 2008

26  *Charlene H. Sorrentino*
    CHARLENE H. SORRENTINO
    UNITED STATES DISTRICT COURT

10